Cassandra P. Miller
Andrew G. Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
T: (872) 263-1100
F: (872) 263-1109
cmiller@straussborrelli.com
agunem@straussborrelli.com

[Additional Counsel in Signature Block]
*Attorneys for Plaintiffs and the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GANESH SANKAR, ERIKA TITUS-LAY, JARED CAVANAUGH,** and **KIMBERLY VONGNALITH**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CALIFORNIA NORTHSTATE UNIVERSITY, LLC**,<br><br>Defendant. | Lead Case No. 2:24-cv-00473-DAD-JDP<br><br>Date: April 21, 2025<br>Time: 1:30 p.m.<br>Courtroom: 4, 15th Floor |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS


**I. INTRODUCTION ........ 1**

**II. STATEMENT OF FACTS ........ 2**

**III. SETTLEMENT TERMS ........ 4**

A. The Settlement Class - The proposed Settlement Class is defined as: ........ 4

B. Settlement Fund ........ 4

C. Settlement Class Member Benefits ........ 4

1. Cash Payment A –Documented Losses ........ 4

2. Cash Payment B – Flat Cash Payment ........ 5

3. Credit Monitoring ........ 5

4. Pro Rata Adjustments on Cash Payments ........ 5

5. Business Practice Changes ........ 5

D. Settlement Administration ........ 6

E. Notice to Settlement Class Members ........ 6

F. Opt-Outs and Objections ........ 7

G. Release ........ 8

H. Attorneys' Fees, Costs, and Service Awards ........ 8

**IV. LEGAL STANDARD ........ 9**

**V. ARGUMENT ........ 9**

A. Preliminary Certification of the Settlement Class is Warranted. ........ 10

B. The Settlement Satisfies Rule 23(a). ........ 11

1. Numerosity ........ 11

2. Commonality ........ 11

3. Typicality ........ 12

4. Adequacy ........ 12

C. The Settlement Satisfies Rule 23(b)(3). .......... 13
1. Predominance .......... 13
2. Superiority .......... 14
D. The Settlement is Fair, Reasonable, and Adequate .......... 14
1. Adequate Representation .......... 15
2. Arm's Length Negotiations .......... 15
3. Adequate Relief .......... 16
4. Equitable Treatment .......... 17
E. The Settlement Is Proper Under Briseño and Satisfies the Bluetooth Factors. .......... 18
F. The Settlement Satisfies the Hanlon Factors. .......... 19
1. The Strength of Plaintiffs' Case. .......... 19
2. The Risks, Expense, Complexity, and Duration of Further Litigation. .......... 20
3. The Risk of Maintaining Class Certification. .......... 21
4. The Amount of the Settlement. .......... 21
5. Investigation and Discovery. .......... 22
6. The Experience and Views of Counsel. .......... 22
7. The Presence of a Government Participant. .......... 22
8. The Reaction of Settlement Class Members. .......... 23
G. The Court Should Approve the Notice Program. .......... 23
H. The Court Should Appoint Class Counsel. .......... 24
I. Proposed Schedule of Post-Settlement Events .......... 25
**VI. CONCLUSION** .......... 25

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007)........................................................................................ 15

*Adoma v. Univ. of Phx., Inc.*,
913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................................................. 22

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................................... 16, 18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ............................................................................................................ 19

*Ballew v. Huuuge, Inc.*,
No. CV 23-4324, 2025 U.S. Dist. LEXIS 12445 (C.D. Cal. Jan. 22, 2025) ............................ 17

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ........................................................................... 3, 24, 25

*Carter v. Vivendi Ticketing United States LLC*,
No. SACV 22-01981, 2023 U.S. Dist. LEXIS 210744 (C.D. Cal. Oct. 30, 2023).. 17, 23, 24, 27

*Gaston v. Fabfitfun, Inc.*,
No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695 (C.D. Cal. Dec. 9, 2021) ........................ 27

*Gupta v. Aeries Software, Inc.*,
No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141 (C.D. Cal. Mar. 3, 2023)21, 22, 23, 24, 25, 29

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................... 3, 16, 25

*Harbour v. Cal. Health & Wellness Plan*,
No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783 (N.D. Cal. Jan. 16, 2024) .. 16, 25, 26, 27, 28, 29

*Hashemi v. Bosley, Inc.*,
No. CV 21-946, 2022 U.S. Dist. LEXIS 210946 (C.D. Cal. Nov. 21, 2022).......... 17, 24, 25, 29

*Hellyer v. Smile Brands Inc.*,
No. 8:21-cv-01886, 2023 U.S. Dist. LEXIS 137295 (C.D. Cal. Aug. 4, 2023)...... 16, 18, 19, 21

*In re 23Andme, Inc. Customer Data Sec. Breach Litig.*,
No. 24-md-03098, 2024 U.S. Dist. LEXIS 219622 (N.D. Cal. Dec. 4, 2024). 16, 18, 19, 20, 21, 24, 26, 27

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................ 3, 16, 23, 24

*In re Cal. Pizza Kitchen Data Breach Litig.*,
No. 8:21-cv-01928, 2023 U.S. Dist. LEXIS 60272 (C.D. Cal. Feb. 22, 2023)............ 16, 17, 23

*In re Loandepot Data Breach Litig.*,
No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335 (C.D. Cal. Jan. 13, 2025) . 16, 18, 19, 20, 21, 27

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2009)........................................................................ 29

*In re Postmeds, Inc. Data Breach Litig.*,
No. 23-cv-05710, 2024 U.S. Dist. LEXIS 215466 (N.D. Cal. Nov. 26, 2024) 15, 16, 18, 19, 20, 21, 23, 26, 27, 30

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020)............. 23

*La Fleur v. Med. Mgmt. Int'l*,
No. EDCV 13-00398, 2014 U.S. Dist. LEXIS 90367 (C.D. Cal. June 25, 2014)..................... 15

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998) ........................................................................ 28

*McKinney-Drobnis v. Oreshack*,
16 F.4th 594 (9th Cir. 2021) ........................................................................ 21

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................ 30

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)........................................................................ 22

*Peterson v. Vivendi Ticketing US LLC*,
No. CV 23-7498, 2024 U.S. Dist. LEXIS 155397 (C.D. Cal. June 20, 2024) . 15, 16, 18, 19, 20, 21, 26, 27, 28

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010)........................................................................ 17

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........................................................................ 29

*Russell v. Kohl's Dep't Stores, Inc.*,
755 F.Appx. 605 (9th Cir. 2018) ........................................................................ 25

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .......... 30

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) .......... 15, 16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .......... 15

*Uschold v. NSMG Shared Servs., LLC*,
333 F.R.D. 157 (N.D. Cal. 2019) .......... 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 17

*Wright v. Linkus Enters., Inc.*,
259 F.R.D. 468 (E.D. Cal. 2009) .......... 15

**Statutes**

Cal. Bus. & Prof. Code § 17200, et seq. (“UCL”) .......... 9

Cal. Civ. Code § 1798.150 (“CCPA”) .......... 9

Cal. Civ. Code § 1798.80, et seq. (“CRA”) .......... 9

**Other Authorities**

*Manual for Complex Litigation.*,
§ 21.632 (4th ed. 2013) .......... 16

**Rules**

Fed. R. Civ. P. 23(a)(1) .......... 17

Fed. R. Civ. P. 23(a)(2) .......... 17

Fed. R. Civ. P. 23(a)(3) .......... 18

Fed. R. Civ. P. 23(a)(4) .......... 18

Fed. R. Civ. P. 23(b)(3) .......... 19, 20

Fed. R. Civ. P. 23(c)(2)(B) .......... 29, 30

Fed. R. Civ. P. 23(e) .......... 15, 20, 24, 29

Fed. R. Civ. P. 23(e)(2) .......... 21

Fed. R. Civ. P. 23(g)(1)(A) (i–iv) ........ 30
Fed. R. Civ. P. 23(g)(1)(B) ........ 30

## I. INTRODUCTION

Plaintiffs Ganesh Sankar, Erika Titus-Lay, Jared Cavanaugh, and Kimberly Vongnalith respectfully move for preliminary approval of a proposed class action settlement reached with Defendant California Northstate University, LLC. This Settlement[1] resolves claims arising from a data incident that occurred between February 12, 2023, and February 13, 2023, in which unauthorized actors gained access to certain files containing sensitive information of Defendant's current, former, and prospective students and employees.

The Settlement provides substantial relief for the Settlement Class, including a non-reversionary, all cash $400,000.00 Settlement Fund and business practice changes developed to increase the cyber security protection of the Private Information of the Settlement Class maintained by Defendant. Subject to the Court's approval, the Settlement Fund will also be sued to pay: court-approved Service Awards of $2,000.00 to each Plaintiff to compensate them for the time they spent and risk they incurred serving as Class Representatives; Class Counsel's attorneys' fees of no more than 25% of the Settlement Fund; Class Counsel's costs in prosecuting this action; and the costs of Notice and Settlement Administration Costs. The Parties have agreed to a direct Notice Program designed to afford Settlement Class members due process and advise them of their rights under the Settlement.

As explained below, the Settlement is the product of informed, arms-length negotiations between experienced counsel and is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel for the Settlement Class; (iv) approving the form of the Notices and the Notice Program; (v) approving the Claim Form and the Claim process; (vi) appointing Kroll Settlement Administration, LLC, as the Settlement Administrator; (vii) establishing procedures and deadlines for Settlement Class

---

[1] All capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement, attached hereto as ***Exhibit A***.

members to opt-out and Settlement Class Members to object; and (viii) scheduling a Final Approval Hearing at which time the Court will consider Final Approval of the Settlement, Class certification, and Class Counsel's Application for Attorneys' Fees, Costs and Service Awards.

## II. STATEMENT OF FACTS

Defendant is a for-profit private university based in Sacramento County, California. As part of its business, Defendant collected and continues to collect Private Information from thousands of its students and employees. Plaintiffs allege that Defendant failed to implement adequate data security measures—which Plaintiffs claim resulted in the theft of the highly sensitive personally identifiable information of its current and former students and employees during a data breach.

On December 21, 2023, Defendant announced that it had identified unauthorized access to certain files on its systems. The potentially compromised files contained names and other personal information of individuals associated with Defendant, including Social Security numbers in some instances.

In February 2023, an unauthorized third party, identified as the cybercriminal group "AvosLocker," gained access to Defendant's systems during the Data Incident. During the Data Incident, certain Private Information of current and former students and employees was potentially accessed and exfiltrated. The potentially compromised data varied from person to person, but is reported to have included names, Social Security numbers, driver's license numbers, financial account numbers, passport numbers, dates of birth, and medical information. Following the incident, AvosLocker allegedly published portions of the data on a Dark Web site, where it was made available for viewing and potential purchase. The published information purportedly included student admissions data, such as names, Social Security numbers, dates of birth, addresses, emails, and telephone numbers, as well as tax documents for college employees from the 2022 tax year.

Plaintiffs Ganesh Sankar and Erika Titus-Lay filed separate class actions in the United

States District Court for the Eastern District of California, asserting similar claims against Defendant. *See* Class Counsel's Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval, ("Joint Decl."), attached hereto as ***Exhibit B***, ¶ 5. The cases were consolidated on May 15, 2024, and a Consolidated Class Action Complaint was filed on June 14, 2024, adding Plaintiffs Jared Cavanaugh and Kimberly Vongnalith. *Id.* ¶ 6. Plaintiffs bring claims on behalf of themselves, a proposed nationwide class, and a California sub-class, alleging causes of action for: (1) negligence; (2) breach of implied contract; (3) invasion of privacy; (4) unjust enrichment; (5) breach of fiduciary duty; (6) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL"); (7) violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150 ("CCPA"); (8) violation of the California Customer Records Act, Cal. Civ. Code § 1798.80, et seq. ("CRA"); and (9) requests for declaratory and injunctive relief. *Id.* ¶ 7.

Defendant filed a Motion to Dismiss on July 15, 2024. *Id.* ¶ 8. Plaintiffs opposed the motion, and Defendant filed a reply on September 4, 2024. *Id.* Before reaching a settlement, the Parties engaged in both formal and informal discovery to assess the merits of their respective claims and defenses. *Id.* ¶ 9. Plaintiffs propounded written discovery, including interrogatories and requests for production, while Defendant provided information regarding the scope and impact of the Data Incident. *Id.* ¶ 10. In addition, the Parties exchanged informal discovery, including discussions about Defendant's data security practices, remedial measures taken following the incident, and the potential risks and damages associated with the alleged breach. *Id.* ¶ 11. To facilitate resolution, the Parties agreed to participate in private mediation with an experienced data breach mediator, which was scheduled for December 12, 2024. *Id.* ¶ 12. However, through continued negotiations and a thorough evaluation of the relevant facts and legal issues, the Parties were able to reach a Settlement before the scheduled mediation date, avoiding the time and expense of further litigation. *Id.* ¶ 13. By November 27, 2024, the Parties reached an agreement on the material terms of the Settlement, leading to the filing of this Motion for Preliminary Approval. *Id.* ¶ 14.

## III. SETTLEMENT TERMS

**A. The Settlement Class -** The proposed Settlement Class is defined as:

> All persons in the United States whose Private Information was potentially accessible as a result of the Data Incident, including those who were sent notification from Defendant that their Private Information was potentially accessible as a result of the Data Incident.

S.A. ¶ 60. Excluded from the Settlement Class are: (a) all persons who are governing board members of the Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff. S.A. ¶60.

**B. Settlement Fund -** The Settlement provides for a non-reversionary cash Settlement Fund of $400,000.00, used to pay (1) Settlement Class Member Benefits to those Settlement Class Members who submit a Valid Claim; (2) any Service Awards awarded to Class Representatives; (3) any attorneys' fees and costs awarded to Class Counsel; and (4) all Settlement Administration Costs. S.A. ¶¶ 63, 67.

**C. Settlement Class Member Benefits -** When submitting a Claim for a Cash Payment, Settlement Class members must choose either Cash Payment A or Cash Payment B. Additionally, Settlement Class members may elect to receive Credit Monitoring. S.A. ¶¶ 70.

**1. Cash Payment A –Documented Losses-** Settlement Class Members may submit a claim for a Cash Payment for up to $5,000.00 per Settlement Class Member upon presentment of documented losses related to the Data Incident, subject to *pro rata* adjustments. To receive a documented loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant or otherwise. S.A. ¶¶ 70(a).

**2. Cash Payment B – Flat Cash Payment** - As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B, which is a flat cash payment in the amount of $100.00, subject to *pro rata* adjustments. S.A. ¶¶ 70(b).

**3. Credit Monitoring -** In addition to electing a Cash Payment, Settlement Class Members may elect one year of three-bureau Credit Monitoring that will provide the following benefits: three-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. S.A. ¶¶ 70(c).

**4. Pro Rata Adjustments on Cash Payments -** Cash Payments to Settlement Class Members will be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payment A, and finally for Cash Payment B. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis. In the unexpected event the value of Credit Monitoring and/or Cash Payment A on its own exhausts the amount of the Settlement Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund. S.A. ¶¶ 71.

**5. Business Practice Changes -** Plaintiffs have received assurances that Defendant has undertaken reasonable steps to further secure their systems and environments. Defendant has provided confidential discovery regarding the facts and circumstances of the Data Incident and Defendant's response thereto, and the changes and improvements that have been and/or will be made to protect Settlement Class Members' Private Information. Defendant will provide a sworn declaration attesting to the amount of money spent on remediation efforts and security enhancements. S.A. ¶¶ 72.

**D. Settlement Administration -** The Parties agree that, subject to Court approval, Kroll shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution. S.A. ¶¶ 75.

**E. Notice to Settlement Class Members -** The proposed Notice forms are attached to the Agreement as Exhibits 1 (Postcard Notice) and 2 (Long Form Notice). The Claim Form is attached as Exhibit 3. S.A. ¶¶ 21, 38, 48.

Within five days of Preliminary Approval, Defendant will provide the Class List, including names and postal addresses of Settlement Class members, to the Settlement Administrator. S.A. ¶¶ 25, 79. Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program, using the forms of Notice approved by the Court. S.A. ¶ 80.

The Settlement Administrator will send Postcard Notice via U.S. Mail. S.A. ¶ 48. The Settlement Administrator shall perform reasonable address traces for Postcard Notices that are returned as undeliverable. S.A. ¶ 86. By way of example, a reasonable tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. *Id.* No later than 60 days before the original date set for the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Postcard Notice to those Settlement Class members whose new addresses were identified as of that time through address traces. *Id.*

The Long Form Notice will be available on the Settlement Website, which will include the Settlement Agreement, Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, along with other relevant documents. S.A. ¶¶ 38, 64. The Settlement Website will also provide a toll-free telephone number and mailing address for inquiries, as well as an

electronic option for submitting Claim Forms. S.A. ¶ 77. The Settlement Administrator will maintain an automated toll-free telephone line for Settlement Class members to obtain more information about the Settlement and answer frequently asked questions. *Id*.

**F. Opt-Outs and Objections -** The procedures for opting out and objecting are detailed in plain language in the Long Form Notice, the Settlement Agreement, and on the Settlement Website. S.A. ¶¶ 64, 83-85.

Individuals in the Settlement Class may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The opt-out request must be personally signed by the Settlement Class member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. S.A. ¶ 83.

Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. S.A. ¶ 84. For an objection to be considered by the Court, the objection must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action

settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the objector's signature (an attorney's signature is not sufficient). S.A. ¶ 85. Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel. S.A. ¶ 86.

**G. Release -** In exchange for the Settlement Class Member Benefits, all Settlement Class Members will release all Released Claims against Defendant as detailed in the Settlement Agreement. S.A. § XIII.

**H. Attorneys' Fees, Costs, and Service Awards -** Class Counsel shall apply to the Court for an award of attorneys' fees of up to 25% of the Settlement Fund, plus reimbursement of costs, and Service Awards for the Class Representatives not to exceed $2,00.00 each. S.A. ¶¶ 103-04. Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards shall be filed as part of their Motion for Final Approval, not later than 45 days before the original date set for the Final Approval Hearing. S.A. ¶ 101.

The Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after all material terms

of the Settlement. S.A. ¶ 105.

## IV. LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class—which is appropriate when the settlement class satisfies Federal Rule of Civil Procedure 23(a) and one of the Rule 23(b) prongs. *La Fleur v. Med. Mgmt. Int'l*, No. EDCV 13-00398, 2014 U.S. Dist. LEXIS 90367, at *7 (C.D. Cal. June 25, 2014). Furthermore, Rule 23(e) "requires the Court to approve any settlement of class claims and requires reasonable direct notice to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting Fed. R. Civ. P. 23(e)) (cleaned up). To do so, the court must evaluate "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (quoting *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003)).

## V. ARGUMENT

"Approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval." *Peterson v. Vivendi Ticketing US LLC*, No. CV 23-7498, 2024 U.S. Dist. LEXIS 155397, at *9 (C.D. Cal. June 20, 2024) (quoting *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016)). At the preliminary approval stage, the court need only "evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Id.* (quoting *Wright v. Linkus Enters., Inc*., 259 F.R.D. 468, 472 (E.D. Cal. 2009)). "At the preliminary approval stage, the settlement need only be potentially fair." *In re Postmeds, Inc. Data Breach Litig*., No. 23-cv-05710, 2024 U.S. Dist. LEXIS 215466, at *18 (N.D. Cal. Nov. 26, 2024) (emphasis added) (quoting *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019)).

The proposed Settlement satisfies the standard for preliminary approval. Joint Decl. ¶ 15. For one, this Settlement was the product of adversarial, arms-length, and non-collusive negotiations. *Id.* ¶ 18. This context is significant because "[a] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable

counsel after meaningful discovery." *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *10 (quoting *Spann*, 314 F.R.D. at 324 (C.D. Cal. 2016)). Moreover, as explained below, the Settlement satisfies Rules 23(a), 23(b)(3), 23(e), satisfies the *Bluetooth* factors, and is supported by the Ninth Circuit's eight *Hanlon* factors.

**A. Preliminary Certification of the Settlement Class is Warranted.**

Before granting preliminary approval, the Court should first determine if certification is appropriate for the proposed Settlement Class. *See Manual for Complex Litigation.*, § 21.632 (4th ed. 2013). Certification is appropriate if the proposed class, representatives, and counsel satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Under 23(b)(3), the class action must satisfy the two requirements of predominance and superiority. *Id*. 615–16. Still, when considering a request for settlement-only class certification, the court need not consider trial manageability. *Id*. at 620; *see also In re Cal. Pizza Kitchen Data Breach Litig*., No. 8:21-cv-01928, 2023 U.S. Dist. LEXIS 60272, at *8 (C.D. Cal. Feb. 22, 2023) (granting final approval and noting that "the Court need not address any issues of manageability for litigation purposes").

Within this Circuit, courts routinely certify data breach class actions like this for settlement. *See, e.g., In re Loandepot Data Breach Litig*., No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335, at *17 (C.D. Cal. Jan. 13, 2025) (granting preliminary approval of a data breach class action settlement); *In re 23Andme, Inc. Customer Data Sec. Breach Litig*., No. 24-md-03098, 2024 U.S. Dist. LEXIS 219622, at *14 (N.D. Cal. Dec. 4, 2024) (same); *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *7 (same); *Hellyer v. Smile Brands Inc*., No. 8:21-cv-01886, 2023 U.S. Dist. LEXIS 137295, at *7 (C.D. Cal. Aug. 4, 2023) (same); *Harbour v. Cal. Health & Wellness Plan*, No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783, at *2 (N.D. Cal. Jan. 16, 2024) (granting final approval a data breach class action settlement); *Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981, 2023 U.S. Dist. LEXIS 210744, at *1 (C.D. Cal. Oct. 30, 2023) (same); *In re Cal. Pizza Kitchen*, 2023 U.S. Dist. LEXIS 60272, at *8 (same); *Hashemi*

*v. Bosley, Inc.*, No. CV 21-946, 2022 U.S. Dist. LEXIS 210946, at *2 (C.D. Cal. Nov. 21, 2022) (same).

**B. The Settlement Satisfies Rule 23(a).**

**1. Numerosity**

Numerosity requires that the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Ballew v. Huuuge, Inc.*, No. CV 23-4324, 2025 U.S. Dist. LEXIS 12445, at *19 (C.D. Cal. Jan. 22, 2025) (quoting *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). Here, the putative class includes approximately 10,414 individuals. Joint Decl. ¶ 20. Thus, numerosity is satisfied.

**2. Commonality**

Commonality requires questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requires that class members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In other words, the determination of common questions must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Even a single common question is sufficient to meet this requirement. *Id*. at 359.

Here, commonality is satisfied because Plaintiffs and Settlement Class members share common questions of law and fact arising from the same common event (i.e., the Data Incident discovered by Defendant on or about February 12, 2023). S.A. ¶ 30. Additionally, Plaintiffs alleged numerous common questions of law and fact—including "if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach" and "if Defendant owed a duty to Class Members to safeguard their [Private Information]" and "if Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct[.]" Compl. ¶ 165.

Such allegations are sufficient to satisfy commonality. *See, e.g., In re 23Andme, Inc. Customer Data Sec. Breach Litig*., 2024 U.S. Dist. LEXIS 219622, at *47 (finding that "[c]ommon questions exist because the [class members] were subject to the same data breach; plus, there are common questions related to the breach such as whether [defendant] could have had better security policies to protect [class member] information"); *In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding commonality satisfied in a data breach class action); *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *11–12 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *19 (same); *Hellyer*, 2023 U.S. Dist. LEXIS 137295, at *7 (same);

**3. Typicality**

Typicality requires the claims or defenses of the class representative to be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Here, typicality is satisfied because the claims and defenses of Plaintiffs mirror the claims and defenses of the Settlement Class—after all, the claims and defenses of Plaintiffs and Settlement Class members all revolve around the same event (i.e., the Data Incident discovered by Defendant on or around February 12, 2023). S.A. ¶ 30. Such similarities are sufficient to satisfy typicality. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding typicality satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 ("Plaintiffs' claims are typical of the class claims because they were subject to the same data breach[.]"); *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *12–13 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *19 (same); *Hellyer*, 2023 U.S. Dist. LEXIS 137295, at *7 (same).

**4. Adequacy**

Adequacy requires the class representative to fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between named Parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Here, adequacy is satisfied because the interests of Plaintiffs and the Settlement Class align (i.e., to secure relief from the harms arising from the Data Incident discovered by Defendant). Joint Decl.

¶ 21. Moreover, Plaintiffs retained qualified counsel with substantial experience in complex litigation and data breach class actions. *Id*. ¶¶ 22, 26, 42. Thus, the Settlement satisfies adequacy. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding adequacy satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 (finding adequacy satisfied because "there are no apparent conflicts"); *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *13–14 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *20 (same); *Hellyer*, 2023 U.S. Dist. LEXIS 137295, at *7 (same).

**C. The Settlement Satisfies Rule 23(b)(3).**

**1. Predominance**

Predominance requires questions of law or fact common to class members to predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The Supreme Court is clear that predominance "does not require" a plaintiff seeking class certification to "show that the elements of [their] claim are susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468-69 (2013). Rather, predominance merely requires "that common questions *predominate* over any questions affecting only individual [class] members." *Id*. (quoting Fed. R. Civ. P. 23(b)(3)) (cleaned up); *see also In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *48–49 ("Admittedly, there may be some variation in class members' individual injuries, specifically, regarding damages; but even assuming such, that in and of itself does not negate predominance given the centrality of the common questions identified above to the resolution of the case.").

Here, predominance is satisfied because Plaintiffs and Settlement Class members share common questions of law and fact arising from the same common event (i.e., the Data Incident discovered by Defendant on or about February 12, 2023). S.A. ¶ 30. As detailed above, Plaintiffs alleged numerous questions of law and fact that are common to the entire Class. *See also* Compl. ¶ 165. These common questions are susceptible to common evidence. Joint Decl. ¶ 23. Moreover, any individualized questions are minor compared to the voluminous number of common

questions. *Id*. Such commonalities are sufficient to satisfy predominance. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding commonality satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *48 ("Common questions predominate over individual ones: the class claims, for instance, revolve around the data breach to which all class members were subject as well as [defendant's] security policies and response to the data breach[.]"); *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *14–15 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *21 (same).

**2. Superiority**

Superiority requires that the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Superiority is readily satisfied in data breach cases like this. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding superiority satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *50 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *23 (same). For example, in the data breach case *In re Postmeds*, the court held that superiority was satisfied because the "judicial economy achieved through common adjudication makes class action a superior method for adjudicating the proposed class's claims." 2024 U.S. Dist. LEXIS 215466, at *16. Here, superiority is also satisfied because class-wide adjudication improves judicial economy. Joint Decl. ¶ 24.

**D. The Settlement is Fair, Reasonable, and Adequate.**

Under Fed. R. Civ. P. 23(e), the court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *50 (quoting Fed. R. Civ. P. 23(e)). In recent years, "Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Id*. (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)). The factors are whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id*. (quoting Fed. R. Civ. P. 23(e)(2)).

**1. Adequate Representation**

As detailed above, Class Counsel provided adequate representation—as evidenced by the Settlement, which provides timely and tailored relief to Plaintiffs and Settlement Class members. Joint Decl. ¶ 25. Moreover, Class Counsel has substantial experience in complex litigation and data breach class actions. *Id*. ¶¶ 22, 26, 42. Thus, this factor weighs toward preliminary approval. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding adequacy satisfied); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 (same); *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *13–14 (same); *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *20 (same); *Hellyer*, 2023 U.S. Dist. LEXIS 137295, at *7 (same); *see also Gupta v. Aeries Software, Inc*., No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141, at *12 (C.D. Cal. Mar. 3, 2023) (finding this factor weighed toward approval when counsel "had a sound basis for measuring the terms of the settlement").

**2. Arm's Length Negotiations**

The Settlement was the product of arm's length negotiations. Joint Decl. ¶¶ 18; *see also id.* ¶¶ 9-13, 19. Additionally, the Settlement was secured only after the Parties exchanged formal and informal discovery—which enabled the Parties to better evaluate their respective claims and defenses. *Id*. ¶ 9-11, 19. Such facts are significant because settlements are presumed fair if they "follow sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc*., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004)); *see also Gupta*, 2023 U.S. Dist. LEXIS 36141, at

*11 (holding that this factor weighed toward approval when the "settlement was reached as a result of intensive, arm's-length negotiations"). Thus, this factor supports approval.

**3. Adequate Relief**

**i. Costs, Risks, and Delay**

The Settlement provides adequate relief—especially in light of the costs, risks, and delays posed by protracted litigation. Joint Decl. ¶ 27. For example, in the data breach case *Gupta*, the court held that this factor supported approval because "even putting aside defendant's defenses, and assuming class certification were granted and upheld on appeal, defeating summary judgment, winning the case at trial, and then sustaining the final judgment on appeal would be extremely difficult." 2023 U.S. Dist. LEXIS 36141, at *13. Therein, the court reasoned that "it is significant that class members will receive a monetary recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Id*. (quoting *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 526 (C.D. Cal. 2004)) (cleaned up). Here, this factor supports approval because the Settlement guarantees relief—as opposed to the mere possibility of relief in the future. Joint Decl. ¶ 27.

**ii. Effectiveness**

The Settlement is effective because the relief provided is tailored to the specific injuries of Settlement Class members (i.e., the Settlement will allocate funds according to the out-of-pocket losses suffered by Settlement Class members). S.A. ¶ 70; Joint Decl. ¶ 28. Additionally, Defendant has agreed to invest in data security improvements—which will be paid by Defendant separate and apart from all other Settlement Class Member. S.A. ¶ 72; Joint Decl. ¶ 29. Thus, this factor weighs toward approval. *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *14 (C.D. Cal.) (holding that "this factor weighs in favor of approval" when "class members were required to submit claim forms to obtain monetary relief"); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *18–19 (C.D. Cal.) (same).

**iii. Attorneys' Fees**

The Settlement is adequate insofar as Plaintiffs seek the standard 25% of the Settlement Fund as attorney fees and costs. S.A. ¶ 104. This supports approval because "[u]nder the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for an attorneys' fees award." *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *20 (N.D. Cal.) (granting preliminary approval when counsel requested 33% because "even if the Court were to award this amount, the majority of the settlement fund will remain for class members") (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)); *see also In re Cal. Pizza Kitchen*, 2023 U.S. Dist. LEXIS 60272, at *10 (awarding $800,000 in attorney fees which equated to 36.3% of the settlement as "fair and reasonable").

**iv. Service Awards**

The Service Awards in the amount of $2,000.00 for each Class Representative are reasonable and consistent with awards in similar cases. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939, at *33 (N.D. Cal. July 22, 2020), aff'd, No. 20-16633, 2022 U.S. App. LEXIS 17680 (9th Cir. June 27, 2022) (approving $2,500 to $7,500 awards in data breach cases). The Class Representatives have actively participated in this litigation from its inception, providing valuable information to Class Counsel, reviewing and approving pleadings, and dedicating themselves to pursuing litigation on behalf of the Settlement Class. Joint Decl. ¶ 44.

**v. Other Agreements**

Here, this factor is inapplicable because there are no "agreements required to be identified under Rule 23(e)(3)." *See, e.g., Gupta*, 2023 U.S. Dist. LEXIS 36141, at *16 (C.D. Cal.); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *27 (C.D. Cal.); Joint Decl. ¶ 30.

**4. Equitable Treatment**

The Settlement provides equitable treatment insofar as Settlement Class members may claim relief according to the specific harms suffered (i.e., the Settlement will allocate funds

according to the out-of-pocket losses suffered by Settlement Class members). S.A. ¶ 70(a); Joint Decl. ¶ 31. Thus, this factor also weighs toward approval. *See, e.g., In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *68 (finding that a settlement provided equitable treatment when monetary relief was allocated according to the injuries suffered); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *16–17 (finding that "this factor also weighs in favor of final approval" when the settlement allocated relief "based on the actual harm claimed by each class member"); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *34 (holding that "the Settlement treats class members equitably" when "[c]lass members may receive differing payouts under the Settlement depending on what documentation they have of their ordinary and extraordinary costs"). In sum, the Settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e).

**E. The Settlement Is Proper Under *Briseño* and Satisfies the *Bluetooth* Factors.**

In the Ninth Circuit, class action settlements are often reviewed for the "three red flags" delineated by *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021). These "three red flags" are also called the *"Bluetooth*" factors. *Id*. The three factors are: "(i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if any of the gross settlement amount reverts to the defendant; and (iii) if there is a 'clear sailing arrangement.'" *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *17. None of the red flags are present here. Joint Decl. ¶ 32. First, Class Counsel will request 25% of the Settlement Fund which is within the range accepted by courts. *Id.* Second, the Settlement Fund is *non-reversionary* such that no amount of the Settlement will revert to Defendant. S.A. ¶64. Third, the Settlement Agreement does not contain a clear sailing provision. Joint Decl. ¶ 32.

Thus, the Settlement is proper under *Briseño*, and the Court should grant preliminary approval. *See, e.g., Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *22 ("After considering each of the *Briseño* factors, the Court finds that the Settlement Agreement, on balance, was not collusive or based on inappropriate self-interest."); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *15–16 (holding that "although the Settlement Agreement includes an implicit clear sailing

provision . . . any fees not awarded will not revert to defendant; instead, fees will be added to the net settlement fund, from which payments to class members will be made . . . [t]hus, there is no issue"); *Russell v. Kohl's Dep't Stores, Inc*., 755 F.Appx. 605, 608 (9th Cir. 2018) (concluding that existence of clear sailing provision did not undermine settlement in part because class counsel's fees "would come from a common fund" and "fees not awarded to counsel . . . would not revert" to defendant).

**F. The Settlement Satisfies the *Hanlon* Factors.**

At the preliminary approval stage, courts in the Ninth Circuit often consider the eight factors provided by *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).[2] Specifically, "[i]n determining whether a settlement is fair, reasonable, and adequate, courts must balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement." *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *6 (quoting *Hanlon*, 150 F.3d at 1026). As detailed below, the *Hanlon* factors support preliminary approval because two factors are inapplicable and the other six weigh toward preliminary approval.

**1. The Strength of Plaintiffs' Case.**

In the data breach context, evaluating the strength of a case is difficult because "there have been no data breach cases tried to verdict, and only a handful of cases have achieved class certification." *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *23. Indeed, in *In re Postmeds*, the court approved a $7.5 million common fund settlement—even when the estimated full recovery was approximately $50 million. *Id.* at *24. Similarly, in *In re 23Andme*, the court

[2] The *Hanlon* factors are occasionally called the "*Staton* factors" or the "*Churchill* factors." *See Briseño*, 998 F.3d at 1023 (discussing the "*Hanlon/Staton* factors"); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *12 (discussing the "*Churchill* factors").

approved a $30 million common fund settlement when the potential recovery was "almost $50 billion in damages . . . if the class were to completely prevail at trial[.]" 2024 U.S. Dist. LEXIS 219622, at *54.

Here, the strength of Plaintiffs' case is uncertain. Joint Decl. ¶ 33; *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *14 (C.D. Cal.) (noting that "if litigation were to proceed, there is a fair possibility that Plaintiffs and/or the Settlement Class do not prevail"). After all, [w]ithout a compromise, there [is] little guarantee of any benefit to the Settlement Class without a substantial amount of further litigation." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13. As such, "[t]his factor weighs strongly in favor of the settlement." *Id*.

**2. The Risks, Expense, Complexity, and Duration of Further Litigation.**

In data breach cases, protracted litigation poses substantial risks—especially in terms of establishing liability and damages. *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *55 (explaining that "on liability for the negligence-based claims, [defendant] could argue contributory negligence if a [class member] recycled login credentials or failed to use a unique password" and that "if the class asserts that [class members] suffered losses as a result of the data breach, quantifying those losses—which could be both economic and noneconomic—could be difficult" and that "variation in individual injuries suffered and potential damages claimable, while not necessarily preclusive of certification under Rule 23(b)(3) as noted above, poses challenges"); *see also Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13 (noting that "this factor favors the settlement" because the "data breach injury asserted is legally unproven, technically complex, and potentially of little value").

Additionally, class litigation poses substantial risks of "denial or reversal of class certification . . . losing on summary judgment or at a jury trial . . . [or] revers[al] on appeal" which would "effectively extinguish any hope of recovery by the Settlement Class." *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *24; *see also Carter*, 2023 U.S. Dist. LEXIS 210744, at *16 ("Even if Plaintiffs could secure a better result than the Settlement represents at trial, any result

obtained then would take significantly longer and there is a risk that Plaintiffs could have received much less, or nothing at all."). These risks are likewise present here—and this factor weighs toward approval. Joint Decl. ¶ 34.

**3. The Risk of Maintaining Class Certification.**

Without this Settlement, Plaintiffs would eventually face the risks of obtaining (and then maintaining) class certification. Joint Decl. ¶ 35. "Historically, data breach cases have experienced minimal success in moving for class certification." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *16–17 (quoting *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695, at *6 (C.D. Cal. Dec. 9, 2021)). These risks support approval because "the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13; *see also Peterson*, 2024 U.S. Dist. LEXIS 155397, at *14 (noting that "if the case were to proceed through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class").

**4. The Amount of the Settlement.**

The Settlement provides $400,000.00 for a class of 10,414 (which equates to a value of $38.41 per Settlement Class member). S.A. ¶ 63; Joint Decl. ¶ 36. This strongly weighs toward approval because "other courts have approved settlements in privacy and security cases when each class member received just a few dollars or less." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *13. Indeed, this Settlement provides more value per Settlement Class member than analogous data breach settlements. *See, e.g., In re Loandepot Data Breach Litig.*, No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335, at *4 (C.D. Cal. Jan. 13, 2025) (approving a $25 million common fund for a class of 16,924,007 which equated to $1.48 per class member); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *23 (approving a $30 million common fund for a class of approximately 6.4 million which equated to $4.69 per class member); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *10, 14 (approving a $10 million common fund for a class of approximately 1.4 million which equated to a $7.14 per class member).

**5. Investigation and Discovery.**

This Settlement is the product of robust informal discovery—which enabled the Parties to better evaluate the strengths and weaknesses of their respective claims and defenses. Joint Decl. ¶ 37. In particular, the Parties exchanged information about: the existence and content of any forensic reports, the cause of the Data Incident, the timing and duration of the Data Incident, the impact of the Data Incident, the cybercriminals responsible for the Data Breach, Defendant's response to the Data Incident, Defendant's process for providing notice to Class Members, the size of the Settlement Class, the types of Private Information, the locations of Settlement Class members, the existence (if any) and coverage provided by insurance policies, and the degree to which Defendant is aware of any misuse of the impacted Private Information. *Id.* ¶ 38. Such an investigation is significant because "[f]ormal discovery is not necessary where the parties have sufficient information to make an informed decision about the settlement." *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *11 (quoting *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998)) (cleaned up). Thus, this factor weighs toward preliminary approval.

**6. The Experience and Views of Counsel.**

Here, Class Counsel has substantial experience in complex litigation and data breach class actions. Joint Decl. ¶¶ 22, 26, 42. Based on this experience, Class Counsel believes that this Settlement is a favorable result for Plaintiffs and Settlement Class members. *Id.* ¶¶ 42, 47. Such a recommendation is significant because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation" and "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *15 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) and *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009)). Thus, this factor weighs toward preliminary approval.

**7. The Presence of a Government Participant.**

This factor is inapplicable because the Settlement does not involve any government participant. Joint Decl. ¶ 39. Thus, this factor does not weigh toward (or against) preliminary approval. *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *16 ("Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.").

**8. The Reaction of Settlement Class Members.**

This factor is inapplicable—at this stage in the case—because Settlement Class members have not yet had an opportunity to voice their opinions about the Settlement. Joint Decl. ¶ 40. Thus, this factor does not weigh toward (or against) approval. *See Harbour*, 2024 U.S. Dist. LEXIS 7783, at *16 (granting final approval because of "[t]he reaction of the class was overwhelmingly positive"); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *17 (same).

**G. The Court Should Approve the Notice Program.**

The Court should approve the Notice Program because it directs "notice in a reasonable manner" as required by Rule 23. Fed. R. Civ. P. 23(e)(1)(B). Here, Settlement Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Notice may occur by "United States mail, electronic means, or other appropriate means." *Id*. Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member may appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. *Id*. As such, due process requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *see also Silber v. Mabon*, 18 F.3d 1449,

1453–54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual notice, only that "best practicable notice" is given).

Here, the Notice Plan satisfies due process. Joint Decl. ¶ 41; *see also* Declaration of Settlement Administrator, attached hereto as ***Exhibit C***. The Parties have agreed that "[w]ithin 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program provided herein" and that notice "shall include, among other information: a description of the material terms of this Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class members to object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information." S.A. ¶ 81. Both the Postcard Notice and Long Form Notice provide all the information required by Fed. R. Civ. P. 23(c)(2)(B). Thus, the Notice Program satisfies—and even exceeds—that which is required by due process. *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *26 (approving a similar notice plan).

**H. The Court Should Appoint Class Counsel.**

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv). The proposed Class Counsel meets these requirements. Joint Decl. ¶¶ 42, 43. Thus, the Court should appoint Kristen Lake Cardoso of Kopelowitz Ostrow P.A., Leanna A. Loginov of Shamis & Gentile, P.A., Scott Edelsberg of Edelsberg Law, P.A., and Cassandra P. Miller of Strauss Borrelli PLLC as Class Counsel under Rule 23(g).

### I. Proposed Schedule of Post-Settlement Events

Plaintiffs respectfully propose the following schedule for the Court's review and approval. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for the week of August 4, 2025, or such later date available on the Court's calendar.

| | |
|---|---|
| Deadline for Defendant to provide Class List | **Within 5 days of Preliminary Approval Order** |
| Deadline to commence Notice Program | **Within 30 days of Preliminary Approval Order** |
| Deadline to complete Notice Program | **At least 60 days before the original date of Final Approval Hearing** |
| Deadline for filing Motion for Final Approval, including Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards | **45 days before the original date of Final Approval Hearing** |
| Objection Period Ends | **30 days before the original date of the Final Approval Hearing** |
| Opt-out Period Ends | **30 days before the original date of the Final Approval Hearing** |
| Final Approval Hearing | **Week of August 4, 2025 (or such later date available on the Court's calendar).** |
| Claim Form Deadline | **15 days before the original date of the Final Approval Hearing** |

## VI. CONCLUSION

Plaintiffs respectfully move this Court for entry of an Order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel for the Settlement Class; (iv) approving the form of the Notices and the Notice Program; (v) approving the Claim Form and the Claim process; (vi) appointing Kroll Settlement Administration, LLC, as the Settlement Administrator; (vii) establishing procedures and deadlines for Settlement Class members to opt-out and Settlement Class Members to object; and (viii) scheduling a Final Approval Hearing at which time the Court will consider Final Approval of the Settlement, Class certification, and Class Counsel's Application for Attorneys' Fees, Costs and Service Awards.

Dated: March 4, 2025

Respectfully submitted,

By: */s/ Cassandra P. Miller*

Cassandra P. Miller*
Andrew G. Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com
agunem@straussborrelli.com

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Blvd., Ste. 500
Fort Lauderdale, Florida 33301
Telephone: (954) 990-2218
cardoso@kolawyers.com

Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E #1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

Leanna A. Loginov*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, Florida 33132
Telephone: (305) 479-2299
lloginov@shamisgentile.com

**Pro Hac Vice*

*Attorneys for Plaintiffs and the Proposed Settlement Class*

## CERTIFICATE OF SERVICE

I, Cassandra P. Miller, hereby certify that on March 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 4th day of March, 2025.

STRAUSS BORRELLI PLLC
By: */s/ Cassandra P. Miller*

Cassandra P. Miller
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com