Cassandra P. Miller
Andrew G. Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
T: (872) 263-1100
F: (872) 263-1109
cmiller@straussborrelli.com
agunem@straussborrelli.com

[Additional Counsel in Signature Block]

*Attorneys for Plaintiffs and the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GANESH SANKAR, ERIKA TITUS-LAY, JARED CAVANAUGH, AND KIMBERLY VONGNALITH,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CALIFORNIA NORTHSTATE UNIVERSITY, LLC,**<br><br>Defendant. | Lead Case No. 2:24-cv-00473-DAD-JDP<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>Judge Dale A. Drozd<br><br>Date: April 20, 2026<br>Time: 1:30 p.m.<br>Courtroom: 4 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE THAT** on Monday, April 20, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard by the Hon. Dale A. Drozd of the United States District Court for the Eastern District of California, located in Courtroom 4 at 501 I Street, Sacramento, CA 95814. Plaintiffs, through their undersigned counsel of record, will and hereby do move pursuant to Federal Rule of Civil Procedure 23 for entry of an order, *inter alia*:

(1) granting final approval of the Settlement;

(2) finally certifying the Settlement Class for purposes of settlement only;

(3) finally appointing Plaintiffs Ganesh Sankar, Erika Titus-Lay, Jared Cavanaugh, and Kimberly Vongnalith as Class Representatives;

(4) finally appointing Kristen Lake Cardoso of Kopelowitz Ostrow P.A., Leanna A. Loginov of Shamis & Gentile, P.A., Scott Edelsberg of Edelsberg Law, P.A. and Cassandra P. Miller of Strauss Borrelli PLLC as Class Counsel;

(5) finally appointing Kroll Settlement Administration, LLC as the Settlement Administrator;

(6) awarding the requested Attorney Fees, Costs, and Service Awards; and

(7) finding that Notice complied with the Court's Preliminary Approval Order, due process, and the Federal Rules of Civil Procedure.

This Unopposed Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Joint Declaration of Class Counsel

(**Exhibit 1**), the Declaration of Andrea R. Dudinsky of Kroll Settlement Administration LLC (**Exhibit 2**), all pleadings and exhibits herein, and any other matter of which this Court may take judicial notice. Pursuant to Local Rule 230, proposed Settlement Class Counsel conferred with Defendant, and Defendant does not oppose the relief sought by Plaintiffs.

**CERTIFICATION OF MEET AND CONFER COMPLIANCE**

Pursuant to the Court's Standing Order, undersigned counsel certifies that counsel for Plaintiffs met and conferred with counsel for Defendant regarding the substance of the contemplated motion. Defendant does not oppose the relief requested.

Dated: March 6, 2026

By: */s/ Cassandra P. Miller*

Cassandra P. Miller*
Andrew G. Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Ste. 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com
agunem@straussborelli.com

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Blvd., Ste. 500
Fort Lauderdale, Florida 33301
Telephone: (954) 990-2218
cardoso@kolawyers.com

Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E #170
Los Angeles, CA 90067
Telephone: (305) 975-3320
scott@edelsbergla w.com

Leanna A. Loginov*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Telephone: (305) 479-2299
lloginov@shamisgentile.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 1

A. Litigation History. .......... 1

B. The Settlement Class. .......... 4

C. Settlement Benefits. .......... 4

D. The Notice Program. .......... 6

E. Opt-Outs & Objections. .......... 7

F. Settlement Administration. .......... 7

III. LEGAL STANDARD .......... 7

IV. ARGUMENT .......... 8

A. The Settlement Class satisfies Rule 23(a) and Rule 23(b)(3). .......... 9

B. Final Approval Is Appropriate Under Rule 23(e). .......... 12

1. Class Counsel and Plaintiffs Provided Adequate Representation. .......... 13

2. The Settlement was Negotiated at Arm's Length. .......... 13

3. The Settlement Provides Adequate Relief. .......... 14

4. The Settlement Treats Settlement Class Members Equitably. .......... 16

C. The Settlement is Proper Under *Briseño* and the *Bluetooth* Factors. .......... 16

D. The *Hanlon/Staton* Factors Support Final Approval. .......... 17

1. The Strength of Plaintiff's Case. .......... 18

2. The Risk, Expense, Complexity, and Duration of Litigation. .......... 19

3. The Risk of Maintaining Class Action Status. ....19

4. The Amount Offered in Settlement. ....19

5. The Extent of Discovery and Stage of Proceedings. ....20

6. The Experience and Views of Counsel. ....20

7. The Presence of a Governmental Participant. ....21

8. The Reaction of the Settlement Class Members. ....21

E. The Notice Program Satisfied Due Process. ....21

V. CONCLUSION ....22

# TABLE OF AUTHORITIES

## Cases

*Atzin v. Anthem, Inc.*,
No. 2:17-cv-06816, 2022 U.S. Dist. LEXIS 166417 (C.D. Cal. Sep. 14, 2022)....9

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021)..................................................... iv, 1, 8, 16, 17, 18

*Carter v. Vivendi Ticketing United States LLC*,
No. SACV 22-01981, 2023 U.S. Dist. LEXIS 210744 (C.D. Cal. Oct. 30, 2023)8, 10, 11, 12, 14, 20

*Gupta v. Aeries Software, Inc.*,
No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141 (C.D. Cal. Mar. 3, 2023)....8, 14, 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)........................................ iv, 1, 8, 17, 18, 19, 20, 21

*Harbour v. Cal. Health & Wellness Plan*,
No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783 (N.D. Cal. Jan. 16, 2024) 8, 10, 11, 12, 14, 18, 20

*Hashemi v. Bosley, Inc.*,
No. CV 21-946, 2022 U.S. Dist. LEXIS 210946 (C.D. Cal. Nov. 21, 2022). 9, 14, 17, 19, 20

*In re Canon United States Data Breach Litig.*,
No. 20-CV-6239, 2024 U.S. Dist. LEXIS 138499 (E.D.N.Y. Aug. 5, 2024) ......19

*In re Onix Grp., LLC Data Breach Litig.*,
No. 23-2288, 2024 U.S. Dist. LEXIS 225686 (E.D. Pa. Dec. 13, 2024)..............18

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)..........................................................................8

*Maldini v. Marriott Int'l, Inc.*,
140 F.4th 123 (4th Cir. 2025) ..........................................................................19

*Mary Nguyen v. Westlake Servs. Holding Co.*,
No. 8:23-cv-00854, 2025 U.S. Dist. LEXIS 147801 (C.D. Cal. Jan. 27, 2025).....8

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
311 F.R.D. 590 (C.D. Cal. 2015) ....................................................................9

*Tanner v. Plavan Commer. Fueling, Inc.*,
No. 3:24-cv-1341, 2025 U.S. Dist. LEXIS 150643 (S.D. Cal. Aug. 4, 2025) ..8, 9, 10, 11, 13, 15, 16, 18, 20, 21, 22

*Tobias v. Nvidia Corp.*,
No. 20-cv-06081, 2025 U.S. Dist. LEXIS 11615 (N.D. Cal. Jan. 16, 2025) .......16

**Statutes**

California Consumer Privacy Act,
Cal. Civ. Code § 1798.150 ...........................................................................2

California Customer Records Act,
Cal. Civ. Code § 1798.80, et seq.....................................................................2

California's Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, et seq. ..........................................................2

**Other Authorities**

WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022).........................................................................................................12

**Rules**

Federal Rules of Civil Procedure, Rule 23 ........ iv, 1, 8, 9, 12, 13, 14, 15, 16, 18, 22

## I. INTRODUCTION

On December 9, 2025, the Court granted Preliminary Approval of the Class Action Settlement, as set forth in a Settlement Agreement ("S.A.") between Plaintiffs Ganesh Sankar, Erika Titus-Lay, Jared Cavanaugh, and Kimberly Vongnalith ("Plaintiffs" or "Class Representatives"), and Defendant California Northstate University, LLC ("Defendant") (together the "Parties"). Pursuant to the Court's Order, the Settlement Administrator, Kroll Settlement Administration, LLC ("Kroll" or "Settlement Administrator"), issued notice to the Settlement Class on January 9, 2026. Declaration of Andrea R. Dudinsky of Kroll Settlement Administration ("Kroll Decl."), at ¶9.

Since then, direct notice has reached approximately 97.96% of the Settlement Class. *Id.* ¶12. Settlement Class Members have filed 845 claims, representing a claims rate of 8.47%, and that number may increase as claims continue to be submitted and processed. *Id.* ¶14. Additionally, only one (1) Settlement Class Member has opted out of the Settlement, and no Settlement Class Members have objected. *Id.* ¶17. As explained below, the Settlement satisfies Rule 23 (a), Rule 23(b)(3), Rule 23(e), the *Briseño* analysis, and the *Hanlon/Staton* factors—and the Court should grant final approval of the Settlement.

## II. BACKGROUND

### A. Litigation History.

Defendant is a for-profit private university based in Sacramento County, California. *See* Doc. 20 ("Consolidated Class Action Complaint" or "CAC"), at ¶¶

20, 24, 57. Between February 12, 2023, and February 13, 2023, an unauthorized third party, identified as the cybercriminal group "AvosLocker," gained access to Defendant's systems (the "Data Incident"). *Id*. ¶¶ 39, 43. The Data Incident allegedly impacted the personal identifiable information ("PII") of current and former students and employees of Defendant (the "Settlement Class"). *See Id*. ¶¶ 25, 34. In total, there are 9,978 individuals in the Settlement Class. Kroll Decl., at ¶12.

As a result of the Data Incident, on February 15, 2024, Plaintiff Ganesh Sankar filed a class action complaint against Defendant in this Court. Case No. 2:24-cv-00473-DAD-JDP, Doc. 1. Thereafter, on April 29, 2024, Plaintiff Erika Titus-Lay filed a class action complaint against Defendant in this Court. *See* Case No. 2:24-cv-01231JAM-DB. On May 9, 2024, the Parties filed their stipulation to consolidate the two cases. Doc. 15. Thereafter, on May 14, 2024, the Court granted the joint motion. Doc. 17. On June 14, 2024, Plaintiffs filed their Consolidated Class Action Complaint ("CAC"), adding Plaintiffs Jared Cavanaugh and Kimberly Vongnalith—and brought claims on behalf of themselves, a proposed nationwide class, and a California sub-class, alleging causes of action for (1) negligence, (2) breach of implied contract, (3) invasion of privacy, (4) unjust enrichment, (5) breach of fiduciary duty, (6) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., (7) violation of California Consumer Privacy Act, Cal. Civ. Code § 1798.150, (8) violation of the California Customer Records Act, Cal. Civ. Code § 1798.80, et seq., and (9) requests for declaratory and injunctive relief. CAC ¶¶ 173-274. Defendant filed a motion to dismiss on July 15, 2024, which the

court administratively terminated after the Parties filed their notice of settlement. Doc. Nos. 22, 32.

Over the course of several months, the Parties engaged in arms' length negotiations and exchanged informal discovery—which enabled the Parties to better evaluate the strengths and weaknesses of the underlying claims and defenses. Class Counsel's Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval ("Joint MPA Decl."), at ¶9. Plaintiffs propounded written discovery, including interrogatories and requests for production, while Defendant provided information regarding the scope and impact of the Data Incident. *Id*. ¶10. In addition, the Parties exchanged informal discovery, including discussions about Defendant's data security practices, remedial measures taken following the Data Incident, and the potential risks and damages associated with the alleged breach. *Id*. ¶11. To facilitate resolution, the Parties agreed to participate in private mediation with an experienced data breach mediator, which was scheduled for December 12, 2024. *Id*. ¶12. However, through continued negotiations and a thorough evaluation of the relevant facts and legal issues, the Parties were able to reach a Settlement before the scheduled mediation date, avoiding the time and expense of further litigation. *Id*. ¶13. By November 27, 2024, the Parties reached an agreement on the material terms of the Settlement. *Id*. ¶14. Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement on March 3, 2025. Doc. 42. On August 23, 2025, Defendant filed a statement of non-opposition to the granting of Plaintiffs' motion. Doc. 44. On October 1, 2025, the Court ordered that Plaintiffs file

supplemental briefing addressing areas of concern to the Court. Doc. 45. On October 21, 2025, Plaintiffs filed their supplemental briefing. Doc. 46. Then, on December 9, 2025, the Court granted preliminary approval—and directed the Settlement Administrator to disseminate Notice to the Class. Doc. 48.

**B. The Settlement Class.**

The Settlement Class is defined as "All persons in the United States whose Private Information was potentially accessible as a result of the Data Incident, including those who were sent notification from Defendant that their Private Information was potentially accessible as a result of the Data Incident." S.A. ¶11. In total, there are an estimated 9,978 Settlement Class members. Kroll Decl. ¶12. However, the Settlement Class specifically excludes: (a) all persons who are governing board members of the Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff." S.A. ¶11.

**C. Settlement Benefits.**

The Settlement provides substantial and timely relief to the Settlement Class—most notably, Defendant has agreed to establish a non-reversionary common fund of $400,000.00 (the "Settlement Fund"). *Id*. ¶63. The Settlement provides for the following benefits:

***First***, Settlement Class Members may submit claims for reimbursement of documented losses of up to $5,000.00 for monetary losses incurred as a result of the Data Incident, subject to *pro rata* adjustments. *Id*. ¶70(a). Such claims will be paid from the Settlement Fund. *Id*. ¶67.

***Second***, as an alternative to the documented loss payment above, all Settlement Class members may elect to receive cash payment in the amount of $100.00, subject to *pro rata* adjustments. *Id*. ¶70(b). Such claims will be paid from the Settlement Fund. *Id*. ¶67.

***Third,*** Settlement Class Members may enroll in one year of credit monitoring, which includes three-bureau monitoring, dark web monitoring, identity theft insurance of up to $1,000,000, and identity recovery services. *Id*. ¶70(c).

***Fourth***, the Settlement Fund will pay for the Costs of Settlement Administration, Attorney Fees and Costs, and the Service Awards. *Id*. ¶67.

***Fifth***, the Settlement mandates that Defendant invest in "Business Practice Changes" whereby Defendant "has provided confidential discovery regarding the facts and circumstances of the Data Incident and Defendant's response thereto, and the changes and improvements that have been and/or will be made to protect class members' Private Information." *Id*. ¶ 72. Furthermore, "Defendant will provide a sworn declaration attesting to the amount of money spent on remediation efforts and security enhancements." *Id*. Importantly, Defendant will pay for these improvements separately from the Settlement Fund. *See Id*. ¶ 67.

The Settlement is designed to exhaust the Settlement Fund. In the event there are funds remaining from uncashed checks in the Settlement Fund after the 180-day check negotiation period, all remaining funds shall be distributed to an appropriate and mutually agreeable *cy pres* recipient to be approved by the Court. *Id*. ¶106.

**D. The Notice Program.**

Pursuant to the Court's Order, the Settlement Administrator implemented the approved Notice Program, which successfully reached approximately 97.96% of the Settlement Class. Kroll Decl. ¶¶5-14. On December 15, 2025, Kroll received a data file from Defendant containing 10,263 Settlement Class member names and mailing addresses. *Id*. ¶5. Kroll then undertook several steps to prepare the Class List for the mailing of Postcard Notices, including standardizing addresses, updating addresses through the United States Postal Service's ("USPS") National Change of Address ("NCOA") database, certifying ZIP codes through the Coding Accuracy Support System ("CASS"), and verifying addresses through Delivery Point Validation ("DPV"). *Id* ¶¶10-12. Kroll also removed 285 duplicate records, resulting in a final Class List of 9,978 unique Settlement Class member records. *Id*. These steps ensured the Notice Program was reasonably calculated to provide the best practicable notice under the circumstances and satisfy due process.

On January 9, 2026, Kroll issued Postcard Notice via First Class U.S. Mail to the 9,978 Settlement Class members. *Id*. ¶9. The reach was further enhanced by a Settlement Website, and the Postcard Notice included a link allowing Settlement Class members to access the Long Form Notice and additional information about the Settlement. *Id*. ¶¶3, 6, 14. Postcard Notices returned as undeliverable were remailed to any new address available through USPS information, and to better addresses that may be found using a third-party lookup service. *Id*. ¶ 11. As of March 5, 2026, Kroll

has remailed 407 Postcard Notices. *Id*. In sum, Kroll succeeded in providing direct mail notice to 97.96% of the Settlement Class. *Id*. ¶12.

On January 6, 2026, Kroll also established the Settlement Website at "https://cnusettlement.com/" to provide supplementary notice and easy access to all relevant information. *Id*. ¶6. Settlement Class members are also able to file a Claim Form on the Settlement Website. *Id*.

Kroll also established a toll-free number (833-754-8080) so that Settlement Class members could hear an introductory message and have the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Claim Package be mailed to them. *Id*. ¶7. As of March 5, 2026, there have been 18 phone calls to the toll-free telephone number. *Id*.

**E. Opt-Outs & Objections.**

Only one (1) Settlement Class member opted out of the Settlement, and no objections were received. *Id*. ¶17.

**F. Settlement Administration.**

As of March 5, 2026, Kroll has received 845 claim submissions, representing a 8.47% claims rate among the 9,978-member Settlement Class. *Id*. ¶14. The claims period remains open through April 6, 2026, and Kroll expects to receive additional claims before the deadline. *Id*. Kroll also continues to review and validate the claims that have been submitted. *Id*.

## III. LEGAL STANDARD

"Although there is a 'strong judicial policy that favors settlements,

particularly where complex class action litigation is concerned,' a settlement of class claims requires court approval." *Mary Nguyen v. Westlake Servs. Holding Co*., No. 8:23-cv-00854, 2025 U.S. Dist. LEXIS 147801, at *10 (C.D. Cal. Jan. 27, 2025) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)). When "deciding whether to grant the Final Approval Motion and Fee Motion, the court analyzes (1) whether to certify a class for settlement purposes and (2) the fairness of the Settlement." *Id*.

## IV. ARGUMENT

Final approval is proper under Rule 23 (a), Rule 23(b)(3), Rule 23(e), the *Briseño* analysis, and the *Hanlon/Staton* factors. Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Preliminary Approval ("Joint MPA Decl.") at ¶ 2. As explained below, the Settlement is procedurally and substantively fair, reasonable, and adequate. *Id*. ¶3. Notably, California courts readily grant final approval of analogous data breach class action settlements. *See, e.g., Tanner v. Plavan Commer. Fueling, Inc*., No. 3:24-cv-1341, 2025 U.S. Dist. LEXIS 150643, at *3 (S.D. Cal. Aug. 4, 2025) (granting final approval of a data breach class action settlement); *Harbour v. Cal. Health & Wellness Plan*, No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783, at *27 (N.D. Cal. Jan. 16, 2024) (same); *Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981, 2023 U.S. Dist. LEXIS 210744, at *36 (C.D. Cal. Oct. 30, 2023) (same); *Gupta v. Aeries Software, Inc*., No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141, at *21 (C.D. Cal. Mar. 3, 2023) (same); *Hashemi v. Bosley, Inc*., No. CV 21-946, 2022 U.S. Dist. LEXIS 210946, at *1 (C.D.

Cal. Nov. 21, 2022). Here too, the Court should grant final approval.

**A. The Settlement Class satisfies Rule 23 (a) and Rule 23(b)(3).**

Previously, the Court found that the Settlement Class satisfied Rule 23 (a) and Rule 23(b)(3). Doc. 48. Since then, there has been no intervening change in law or fact to disturb the Court's initial finding. *See Atzin v. Anthem, Inc*., No. 2:17-cv-06816, 2022 U.S. Dist. LEXIS 166417, at *8–9 (C.D. Cal. Sep. 14, 2022) ("Nothing has changed to disturb that conclusion, and class certification remains appropriate."). As explained below, the Settlement Class still satisfies numerosity, commonality, typicality, adequacy, predominance, and superiority. Joint MFA Decl. ¶4. Thus, the Court should grant final approval.

***Numerosity*** is satisfied when "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc*., 311 F.R.D. 590, 602–03 (C.D. Cal. 2015). There are an estimated 9,978 Settlement Class members. Kroll Decl. ¶12. Thus, numerosity is readily satisfied. *See Tanner*, 2025 U.S. Dist. LEXIS 150643, at *5 (granting final approval and finding numerosity satisfied with 2,948 class members).

***Commonality*** is satisfied when "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Here, there are numerous common questions including "if Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII," "if Defendant failed to implement and maintain reasonable

security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach," and "if Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct." CAC ¶ 165. These questions establish commonality. *See, e.g., Tanner*, 2025 U.S. Dist. LEXIS 150643, at *5–6 (granting final approval of a data breach settlement and finding commonality satisfied); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *9–10 (same); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *9–10 (same).

***Typicality*** is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). Here, the claims and relevant defenses of Plaintiffs mirror those of Settlement Class members—after all, the claims and defenses all arise from the same Data Incident. Joint MFA Decl. ¶5. These similarities establish typicality. *See, e.g., Tanner*, 2025 U.S. Dist. LEXIS 150643, at *5–6 (granting final approval of a data breach settlement and finding typicality satisfied); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *9–10 (same); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *9–10 (same).

***Adequacy*** is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Class Counsel "has significant experience in complex class action litigation and is currently litigating hundreds of data breach cases in courts across the country." Joint MFA Decl. ¶6. Moreover, Plaintiffs Ganesh Sankar, Erika Titus-Lay, Jared Cavanaugh, and Kimberly Vongnalith have vigorously prosecuted this case for the benefit of all Settlement Class members and have participated in the litigation,

reviewed pleadings, and participated in the factual investigation of the case. *Id.* ¶7. These facts establish adequacy. *See also Tanner*, 2025 U.S. Dist. LEXIS 150643, at *5–6 (granting final approval of a data breach settlement and finding adequacy satisfied); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *9–10 (same); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *9–10 (same).

***Predominance*** is satisfied when "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). For example, in *Tanner*, the court granted final approval after finding that "[t]he main common question in this case which would be subject to common proof is whether [defendant] failed to properly secure and safeguard the Settlement Class's personal identifiable information" and "[t]hat question predominates in the case." 2025 U.S. Dist. LEXIS 150643, at *5–6. Here too, the main question in this case is whether Defendant failed to properly secure the personal information of its current and former students and employees. Joint MFA Decl. ¶8. Thus, predominance is satisfied. *See also Harbour*, 2024 U.S. Dist. LEXIS 7783, at *9–10 (granting final approval of a data breach settlement and finding predominance satisfied); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *9–10 (same).

***Superiority*** is satisfied when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For example, in *Tanner*, the court granted final approval after finding that "given . . . the number of potential class members, the Court concludes that a class action is a superior mechanism[.]" 2025 U.S. Dist. LEXIS 150643, at *5–6. Here

too, individual adjudication of the 9,978 claims of Settlement Class members would strain judicial resources. Kroll Decl. ¶12. Thus, superiority is satisfied. *See also Harbour*, 2024 U.S. Dist. LEXIS 7783, at *9–10 (granting final approval of a data breach settlement and finding superiority satisfied); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *9–10 (same).

**B. Final Approval Is Appropriate Under Rule 23 (e).**

Under Rule 23 (e), courts must consider four factors when determining if a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). These factors include two "procedural factors" and two "substantive factors." WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:48 (6th ed. 2022). The "procedural factors" are whether "(A) the class representatives and class counsel have adequately represented the class" and "(B) the proposal was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2). The "substantive factors" are whether "(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id*. Here, all four factors support final approval.

**1. Class Counsel and Plaintiffs Provided Adequate Representation.**

The procedural factor Rule 23 (e)(2)(A) supports final approval because Class Counsel and the Plaintiffs provided adequate representation. Joint MFA Decl. ¶10. As explained above, Class Counsel has significant experience in data breach class action litigation. *Id*. ¶ 6. Moreover, Plaintiffs Ganesh Sankar, Erika Titus-Lay, Jared Cavanaugh, and Kimberly Vongnalith have vigorously prosecuted this case for the benefit of all Settlement Class members and have participated in the litigation, reviewed pleadings, and participated in the factual investigation of the case. *Id*. ¶ 7. Thus, this factor supports final approval. *See Tanner*, 2025 U.S. Dist. LEXIS 150643, at *7–8 (finding that this factor supported final approval).

**2. The Settlement was Negotiated at Arm's Length.**

The procedural factor Rule 23 (e)(2)(B) supports final approval because the Settlement was negotiated at arm's length. Joint MFA Decl. ¶11. Here, the Parties exchanged informal discovery which enabled the Parties to better evaluate the strengths and weaknesses of the underlying claims and defenses. *Id*. ¶30. Then, the Parties engaged in arm's length negotiations. *Id*. ¶11. Moreover, "to avoid any conflict of interest, the Parties agreed to not negotiate attorney fees or the service award until after the core terms of the Settlement were agreed upon." *Id*. ¶12. Thus, this factor supports final approval. *See Tanner*, 2025 U.S. Dist. LEXIS 150643, at *7–8 (finding that this factor supported final approval).

### 3. The Settlement Provides Adequate Relief.

The substantive factor Rule 23 (e)(2)(C) supports final approval because the relief provided by the Settlement is adequate. Joint MFA Decl. ¶13. Here, the Settlement Fund of $400,000.00 is projected to pay each Settlement Class Member an average of $20.62—which compares favorably to analogous data breach class action settlements. *See, e.g., Harbour*, 2024 U.S. Dist. LEXIS 7783, at *27 (providing approximately $6.62 per person for a class of 1.51 million); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *3–5 (providing approximately $6.86 per person for a class of 437,310); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *5–6 (providing approximately $17.82 per person for a class of 98,199); *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *1 (providing approximately $4.62 per person for a class of 108,101).

Moreover, the substantive factors in Rule 23 (e)(2)(C) includes four (4) separate subfactors for the court to "tak[e] into account." *See* Rule 23(e)(2)(C). Here, three of these subfactors support final approval, and one subfactor is neutral.

***First***, Rule 23 (e)(2)(C)(i) supports final approval because trial and/or appeal would be costly, risky, and would delay relief to Settlement Class Members. Joint MFA Decl. ¶14. Indeed, "Plaintiffs faced serious risks prevailing on the merits, including proving causation, as well as risks at class certification and at trial, and surviving appeal." *Id*. ¶15. Thus, "a settlement today not only avoids the risks of continued litigation, but it also provides benefits to the Settlement Class Members now as opposed to after years of risky litigation." *Id*. ¶16. Thus, Rule 23(e)(2)(C)(i)

supports final approval. *See Tanner*, 2025 U.S. Dist. LEXIS 150643, at *9 (finding that this factor supported final approval).

***Second***, Rule 23 (e)(2)(C)(ii) supports final approval because the proposed methods for distributing relief and processing claims are effective. Joint MFA Decl. ¶17. Here, the relief is tailored to the specific injuries that Settlement Class Members incurred (i.e., compensation for out-of-pocket losses versus cash payments). S.A. ¶70. Moreover, Settlement Class Members were able to file claims via mail or online—which resulted in a strong claims rate of 8.47%. Kroll Decl. ¶14. Simply put, the Settlement—and the methods for distributing relief and processing claims—compare favorably with analogous data breach settlements. *See Tanner*, 2025 U.S. Dist. LEXIS 150643, at *9–10 (finding that this factor supported final approval because "the relief distribution is straightforward" and "[c]lass members were able to easily complete and submit either by mail or online a claim form").

***Third***, Rule 23 (e)(2)(C)(iii) supports final approval because the proposed award of attorneys' fees is reasonable. Joint MFA Decl. ¶ 18. The Settlement Agreement contemplated a fee award of "up to 25% of the Settlement Fund, plus reimbursement of costs." S.A. ¶104. Additionally, Class Counsel has requested that Kroll delay disbursing any Court approved attorneys' fees until the Settlement Class Members are issued settlement payments. Joint MFA Decl. ¶19. As such, Class Counsel will not receive payment before Settlement Class Members—which further supports the reasonableness of the Settlement and the proposed fee award. *Id*. ¶20. Thus, Rule 23 (e)(2)(C)(iii) supports final approval.

***Fourth***, Rule 23 (e)(2)(C)(iv) is neutral toward final approval because there is no agreement that requires identification. *Id*. ¶21.

**4. The Settlement Treats Settlement Class Members Equitably.**

The substantive factor Rule 23 (e)(2)(D) supports final approval because the Settlement treats Settlement Class members equitably. Joint MFA Decl. ¶22. For example, in *Tanner*, the court held that "this factor is satisfied because although class members may receive differing payouts under the Settlement, those differing amounts are based on class members' differing costs resulting from the data breach." 2025 U.S. Dist. LEXIS 150643, at *10–11. Likewise, the Settlement provides relief tailored to the specific injuries that Settlement Class members incurred (i.e., compensation for out-of-pocket losses versus cash payments). S.A. ¶67.

Finally, the requested Service Awards of $2,000.00 are "presumptively reasonable." *Tanner*, 2025 U.S. Dist. LEXIS 150643, at *18–19 (collecting cases); *see also Tobias v. Nvidia Corp.,* No. 20-cv-06081, 2025 U.S. Dist. LEXIS 11615, at *3 n.1 (N.D. Cal. Jan. 16, 2025) ("At some point, the common law will have to reckon with inflation. $5,000 in February 2012, when the *Harris* decision was issued, had the same buying power as $6,931.41.").

In sum, the procedural and substantive factors of Rule 23 (e)(2) all support final approval (with the caveat that Rule 23(e)(2)(C)(iv) is neutral).

**C. The Settlement is Proper Under *Briseño* and the *Bluetooth* Factors.**

In the Ninth Circuit, class action settlements are often reviewed for the "three red flags" delineated by *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021).

These "three red flags" are also called the *"Bluetooth*" factors. *Id*. The three (3) factors are: "(i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if any of the gross settlement amount reverts to the defendant; and (iii) if there is a 'clear sailing arrangement.'" *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *17.

The first factor is satisfied because Class Counsel has requested 25% of the fund. Joint MFA Decl. ¶23. The second factor is satisfied because the Settlement Agreement lacks a "reverter" or "kicker" clause. *Id*. ¶24. And while the Settlement Agreement provides that Defendant will not object or otherwise challenge, directly, or indirectly, the fee motion, such a clause is not a death knell when the settlement is otherwise fair, reasonable, and adequate. The "mere presence of a clear sailing arrangement is not 'an independent basis for withholding settlement approval.'" *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *20–21 (quoting *Briseño*, 998 F.3d at 1027). Rather, "such arrangements are material only if there is evidence of at least one of the other two *Briseño* factors[.]" *Id*. Here, the Settlement Agreement does not contain a reversionary clause, kicker provision, or disproportionate fee structure. Thus, the Settlement is proper under *Briseño*, and the Court should grant final approval.

**D. The *Hanlon/Staton* Factors Support Final Approval.**

In the Ninth Circuit, courts often apply the eight (8) *Hanlon/Staton* factors when evaluating the fairness, reasonableness, and adequacy of a class settlement.

*Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).[1] While these factors largely overlap with the Rule 23 (e)(2) analysis, Class Counsel provides the following brief analysis of the *Hanlon/Staton* factors (for the sake of thoroughness).

As explained below, seven of the eight factors support approval (and one factor is neutral). Thus, on balance, the *Hanlon/Staton* factors support final approval.

**1. The Strength of Plaintiff's Case.**

The first *Hanlon/Staton* factor supports final approval because the strength of Plaintiff's case is uncertain. Joint MFA Decl. ¶25. To be sure, Plaintiffs believe in the merits of their case, but Defendant "does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint (and similarly does not concede any of the allegations in the other complaints in the Related Actions)…" S.A. ¶ 15; *see Tanner*, 2025 U.S. Dist. LEXIS 150643, at *9 ("While Plaintiff believes in the merits of the case, '[defendant] denies the allegations and the claims made in the Complaint' . . . and there is no guarantee that Plaintiff would prevail. The Court finds these risks weigh in favor of approval."); *see also In re Onix Grp., LLC Data Breach Litig*., No. 23-2288, 2024 U.S. Dist. LEXIS 225686, *27 (E.D. Pa. Dec. 13, 2024) ("[T]here is a risk of establishing liability, and in turn, damages, because this case involves a number of open questions, including whether Defendant owed a duty to the class to safeguard sensitive information, whether Defendant breached that duty[.]"). Thus, this factor supports final approval.

---

[1] The *Hanlon* factors are also called the "*Staton* factors" or the "*Churchill* factors." *See Briseño*, 998 F.3d at 1023 (9th Cir. 2021) (discussing the "*Hanlon/Staton* factors"); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *12 (N.D. Cal.) (discussing the "*Churchill* factors").

**2. The Risk, Expense, Complexity, and Duration of Litigation.**

The second *Hanlon/Staton* factor supports final approval because further litigation would be complex, expensive, and protracted. Joint MFA Decl. ¶26. Indeed, "data breach litigation raises complex issues of damages and causation which can impede, or even prevent, plaintiffs from achieving success on the merits." *Id*. ¶ 27; *see also Hashemi v. Bosley, Inc.,* No. CV 21-946, 2022 U.S. Dist. LEXIS 119454, at *18 (C.D. Cal. Feb. 22, 2022) (explaining that "data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury"). Thus, this factor supports final approval.

**3. The Risk of Maintaining Class Action Status.**

The third *Hanlon/Staton* factor supports final approval because achieving—and then maintaining—class certification is acutely difficult for data breach cases. Joint MFA Decl. ¶28. Indeed, "no data breach class action has reached the trial stage . . . the trial risk is difficult to quantify and raises the uncertainty involved in the case[.]" *In re Canon United States Data Breach Litig*., No. 20-CV-6239, 2024 U.S. Dist. LEXIS 138499, at *30 (E.D.N.Y. Aug. 5, 2024); *see also Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (decertifying class in data breach class action). Thus, this factor supports final approval.

**4. The Amount Offered in Settlement.**

The fourth *Hanlon/Staton* factor supports final approval because the Settlement provides substantial value—i.e., the Settlement Fund of $400,000.00

equates to a value of $20.62 per Settlement Class Member. Joint MFA Decl. ¶29. Such relief compares favorably to analogous data breach class action settlements. *See, e.g., Harbour*, 2024 U.S. Dist. LEXIS 7783, at *27 (providing approximately $6.62 per person for a class of 1.51 million); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *3–5 (providing approximately $6.86 per person for a class of 437,310); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *5–6 (providing approximately $17.82 per person for a class of 98,199); *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *1 (providing approximately $4.62 per person for a class of 108,101). Thus, this factor supports final approval.

**5. The Extent of Discovery and Stage of Proceedings.**

The fifth *Hanlon/Staton* factor supports final approval because "Class Counsel engaged in substantial pre-suit discovery and the Parties exchanged informal discovery—including, *inter alia*, discussions about Defendant's data security practices, remedial measures taken following the Data Incident, and the potential risks and damages associated with the alleged breach. Joint MFA Decl. ¶ 30. Thus, the Parties were able to objectively evaluate the strengths and weaknesses of the underlying claims and defenses. *Id*. ¶ 31; *see also Tanner*, 2025 U.S. Dist. LEXIS 150643, at *8 ("Counsel possessed sufficient information to make an informed decision about the settlement[.]").Thus, this factor supports final approval.

**6. The Experience and Views of Counsel.**

The sixth *Hanlon****Error! Bookmark not defined.****/Staton* factor supports final approval because Class Counsel "has significant experience in complex class action

litigation and is currently litigating hundreds of data breach cases in courts across the country." Joint MFA Decl. ¶32. And based off this experience, Class Counsel believes that the Settlement is fair, reasonable, and adequate. *Id*. ¶33; *see also Tanner*, 2025 U.S. Dist. LEXIS 150643, at *11 ("That such experienced counsel advocate in favor of the settlement weighs in favor of approval."). Thus, this factor supports final approval.

**7. The Presence of a Governmental Participant.**

The seventh *Hanlon/Staton* factor is neutral because there is no governmental participant. Joint MFA Decl. ¶ 34.

**8. The Reaction of the Settlement Class Members.**

The eighth *Hanlon/Staton* factor supports final approval because the Settlement Class has reacted favorably to the Settlement. For one, Settlement Class Members submitted 845 valid claims—which equates to a claims rate of 8.47%. Kroll Decl. ¶14. Moreover, only one (1) Settlement Class Member has submitted an opt-out request and no Settlement Class Members objected to the Settlement. *Id*. ¶17; *see also Tanner*, 2025 U.S. Dist. LEXIS 150643, at *12 ("The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Thus, this factor strongly supports final approval.

**E. The Notice Program Satisfied Due Process.**

The Court should approve the Notice Program—which was successful and provided direct notice to 97.96% of the Settlement Class. Kroll Decl. ¶12. Moreover,

the Notice Program provided Settlement Class members with all the information required by due process, Rule 23 (c)(2)(B), and the Court's Preliminary Approval Order. *See* Doc. 48. The success of the Notice Program is underscored by the strong claims rate of 8.47%. Kroll Decl. ¶14. Thus, the success of the Notice Program further supports final approval. *See Tanner*, 2025 U.S. Dist. LEXIS 150643, at *7 (finding notice sufficient and granting final approval).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval, finally certify the Settlement Class for purposes of settlement, and enter the proposed final approval order.

Dated: March 6, 2026

By: */s/ Cassandra P. Miller*

Cassandra P. Miller*
Andrew G. Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Avenue, Ste. 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com
agunem@straussborelli.com

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Blvd., Ste. 500
Fort Lauderdale, Florida 33301
Telephone: (954) 990-2218
cardoso@kolawyers.com

Scott Edelsberg (SBN 330990)

**EDELSBERG LAW, P.A.**
1925 Century Park E #170
Los Angeles, CA 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

Leanna A. Loginov*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Telephone: (305) 479-2299
lloginov@shamisgentile.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: March 6, 2026 By: */s/ Cassandra P. Miller*
Cassandra P. Miller